Samuel R. Randall (No. 024517)
**RANDALL LAW PLLC**
4742 North 24th Street, Suite 300
Phoenix, Arizona 85016
Telephone: 602.328.0262
Email: srandall@randallslaw.com

Michael A. Josephson (*pro hac vice forthcoming*)
Andrew W. Dunlap (*pro hac vice forthcoming*)
**JOSEPHSON DUNLAP LLP**
5847 San Felipe Street, Suite 2400
Houston, Texas 77057
Telephone: 713.352.1100
Facsimile: 713.352.3300
Emails: mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch (*pro hac vice forthcoming*)
**BRUCKNER BURCH PLLC**
5847 San Felipe Street, Suite 2400
Houston, Texas 77057
Telephone: 713.877.8788
Email: rburch@brucknerburch.com

**ATTORNEYS FOR GOODNOUGH AND THE HOURLY EMPLOYEES**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**
**TUCSON DIVISION**

| | |
|---|---|
| Andrew Goodnough, Individually and for Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>South32 Hermosa Inc., a Nevada corporation,<br><br>Defendant. | **Case No. ________________**<br><br>**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT FOR DAMAGES**<br><br>**(1) Failure to Pay Overtime Wages (Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*);** |

**(2) Failure to Timely Pay Earned Wages (Arizona Wage Act, A.R.S. §§ 23-350; 23-361.02, *et seq.*).**

**(Jury Trial Demanded)**

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Andrew Goodnough (Goodnough) brings this class and collective action to recover unpaid wages and other damages from South32 Hermosa Inc. (South32).

2. South32 employed Goodnough as one of its Hourly Employees (defined below) in Arizona.

3. Goodnough and the other Hourly Employees regularly work more than 40 hours in a workweek.

4. However, South32 does not pay Goodnough and the other Hourly Employees for all their hours worked, including overtime hours.

5. Instead, South32 rounds Goodnough's and the other Hourly Employees' hours to reflect only their prescheduled shifts. (South32's "rounding policy").

6. South32 rounds these employees' hours to reflect only their prescheduled shifts despite the fact they regularly work more, for its primary benefit and to the detriment of the Hourly Employees.

7. Additionally, South32 does not pay Goodnough and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for the hours they work in excess of 40 in a workweek.

8. Instead, South32 pays Goodnough and the other Hourly Employees non-discretionary bonuses, including quarterly production bonuses, that it excludes from their regular rates of pay for overtime purposes (South32's "bonus pay scheme").

9. South32's rounding policy and bonus pay scheme violate the Fair Labor Standards Act (FLSA) by failing to compensate Goodnough and the other Hourly Employees at 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

10. And South32 thus fails to timely pay all earned wages due on designated paydays and upon termination of employment, in violation of the Arizona Wage Act (AWA).

## JURISDICTION & VENUE

11. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

12. This Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

13. This Court has general personal jurisdiction over South32 because it maintains its principal place of business in Arizona.

14. Venue is proper because South32 maintains its principal place of business in Tucson, Arizona, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

15. South32 employed Goodnough as a maintenance tech from approximately May 2025 until February 2026.

16. Throughout his employment, South32 subjected Goodnough to its rounding policy and bonus pay scheme.

17. Goodnough's written consent is attached as **Exhibit 1**.

18. Goodnough brings this class and collective action on behalf of himself and similarly situated South32 employees.

19. The putative FLSA collective of similarly situated employees is defined as:

> **All hourly employees who worked under South32's rounding policy and/or bonus pay scheme during the last 3 years through final resolution of this action (the "FLSA Collective Members").**

20. Goodnough also seeks to represent a class under the AWA pursuant to FED. R. CIV. P. 23.

21. The putative Arizona class of similarly situated employees is defined as:

> **All hourly employees who worked under South32's rounding policy and/or bonus pay scheme in Arizona during the past 1 year through final resolution of this action ("Arizona Class Members").**

22. The FLSA Collective Members and Arizona Class Members are collectively referred to as the "Hourly Employees."

23. South32 is a Nevada corporation headquartered in Tucson, Arizona.

24. South32 may be served with process through its registered agent: C T Corporation System, 3800 N. Central Ave., Ste. 460, Phoenix, Arizona, 85012.

## FLSA COVERAGE

25. At all relevant times, South32 was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

26. At all relevant times, South32 was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

27. At all relevant times, South32 was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cell phones, computers, and personal protective equipment—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

28. At all relevant times, South32 had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

29. At all relevant times, Goodnough and the other Hourly Employees were South32's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

30. At all relevant times, Goodnough and the other Hourly Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

31. South32's Hermosa Project is a proposed "zinc and manganese mining and processing operation in a historic mining district in Santa Cruz County, Arizona near the US-Mexico border."[1]

1 https://www.permits.performance.gov/permitting-project/fast-41-covered-projects/south32-hermosa-critical-minerals-project (last visited June 24, 2026).

32. To meet its business objectives, South32 employs workers, including Goodnough and the other Hourly Employees, to prepare the Hermosa Twin Shaft Mine for production.

33. For example, South32 employed Goodnough as a maintenance tech from approximately May 2025 to February 2026 in Arizona.

34. Goodnough's job duties included maintaining and repairing water pumps, installing water lines and plumbing, as well as ensuring proper water treatment.

35. Goodnough typically worked approximately 12 hours a day and 4 to 5 days a week "on the clock" (48 to 60 hours a workweek).

36. Goodnough and the other Hourly Employees perform their jobs under South32's supervision and use materials, equipment, and technology South32 approves and supplies.

37. South32 requires Goodnough and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

38. Goodnough's and the other Hourly Employees' work must strictly adhere to the uniform standards put in place by South32.

39. At the end of each pay period, Goodnough and the other Hourly Employees receive wages from South32 that are determined by common systems and methods that South32 selects and controls.

40. Likewise, the other Hourly Employees typically work approximately 12 hours a day and 4 to 5 days a week "on the clock" (48 to 60 hours a workweek).

41. But South32 fails to pay Goodnough and the other Hourly Employees for all their hours worked.

42. Under its rounding policy, South32 automatically records Goodnough and the other Hourly Employees as working only their prescheduled shifts even though they regularly work beyond their prescheduled shifts.

43. South32 rounds Goodnough's and the other Hourly Employees' hours for its own primary benefit and to their detriment.

44. For example, Goodnough was typically scheduled to work a 12-hour shift.

45. South32 typically paid Goodnough for exactly 12 hours each workday.

46. Despite this, Goodnough typically worked beyond 12 hours each workday, thus resulting in Goodnough working "off the clock" and without pay.

47. South32 fails to exercise its duty as the Hourly Employees' employer to ensure they are not performing work "off the clock," on its premises that South32 does not want performed.

48. And South32 knows, should know, or recklessly disregards whether Goodnough and the other Hourly Employees routinely perform compensable work "off the clock," and without compensation, before and after their scheduled shifts.

49. Thus, South32 requires, requests, suffers, or permits Goodnough and the other Hourly Employees to perform compensable work "off the clock," without compensation, before and after their scheduled shifts for South32's primary benefit.

50. Despite accepting the benefits, South32 does not pay Goodnough and the other Hourly Employees for the compensable work they perform "off the clock."

51. And throughout their employment, South32 has not paid Goodnough and the other Hourly Employees at the required premium overtime rate for all hours worked in excess of 40 in a workweek.

52. Instead, South32 pays Goodnough and the other Hourly Employees under its bonus pay scheme.

53. Specifically, South32 agrees to pay and subsequently pays Goodnough and the other Hourly Employees non-discretionary bonuses, including production bonuses, that it fails to include in these employees' regular rates of pay for overtime purposes.

54. For example, South32 paid Goodnough a quarterly production bonus of approximately $2,000 but excluded this bonus from his regular rate of pay for overtime purposes during workweeks he earned the bonus and worked over 40 hours.

55. Thus, under South32's bonus pay scheme, it does not pay Goodnough and the other Hourly Employees overtime wages at the required rate—based on all remuneration—for all hours they work in excess of 40 a workweek.

56. Additionally, during Goodnough's final workweek in February 2026, South32 unlawfully deducted from his wages without authorization.

57. Apart from being an unlawful, unauthorized wage deduction, South32's deduction brought Goodnough's wages below Arizona (and federal) minimum wage.

58. Thus, South32 unlawfully deducted from Goodnough's wages and failed to pay him at least minimum wage for each hour worked, in violation of the FLSA and AWA.

59. The Hourly Employees are subject to the same or similar unlawful policies—South32's rounding policy and bonus pay scheme—for similar work, in willful violation of the FLSA.

## Class and Collective Action Allegations

60. Goodnough brings his claims as a class and collective action on behalf of himself and the other Hourly Employees.

61. Like Goodnough, the other Hourly Employees are victimized by South32's rounding policy and/or bonus pay scheme.

62. Other Hourly Employees worked with Goodnough and indicated they were paid in the same manner, performed similar work, and were subject to South32's same or similar rounding policy and/or bonus pay scheme.

63. Based on his experience with South32, Goodnough is aware South32's rounding policy and bonus pay scheme were imposed on other Hourly Employees.

64. The Hourly Employees are similarly situated in the most relevant respects.

65. Even if their precise job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to overtime wages at the required premium rate for all overtime hours worked.

66. Therefore, the specific job titles or job locations of the Hourly Employees do not prevent class or collective treatment.

67. Rather, South32's rounding policy and bonus pay scheme render Goodnough and the other Hourly Employees similarly situated for the purpose of determining their right to overtime wages at the required rate for all overtime hours worked.

68. South32's records reflect the number of "on the clock" hours the Hourly Employees were recorded working each week.

69. South32's records reflect that it automatically rounded the Hourly Employees' hours worked to reflect only their prescheduled shifts, for its primary benefit.

70. South32's records also show it paid the Hourly Employees non-discretionary bonuses it failed to include in their regular rates of pay.

71. The back wages owed to Goodnough and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

72. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to South32's records, and there is no detraction from the common nucleus of liability facts.

73. Therefore, the issue of damages does not preclude class or collective treatment.

74. Goodnough's experiences are typical of the experiences of the other Hourly Employees.

75. Goodnough has no interest contrary to, or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

76. Goodnough has an interest in obtaining the unpaid wages owed to the Hourly Employees under federal and Arizona law.

77. Goodnough and his counsel will fairly and adequately protect the interests of the Hourly Employees.

78. Goodnough retained counsel with significant experience handling complex class and collective action litigation.

79. Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and South32 will reap the unjust benefits of violating the FLSA and AWA.

80. Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome to the judicial system.

81. Indeed, the multiplicity of actions would create a hardship to the Hourly Employees, the Court, and South32.

82. Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

83. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual members.

84. Among the common questions of law and fact are:

a. Whether South32 rounded the Hourly Employees' hours for its own primary benefit;

b. Whether South32 paid the Hourly Employees non-discretionary bonuses;

c. Whether South32 engaged in a policy or practice of failing to include non-discretionary bonuses in the Hourly Employees' regular rates of pay for overtime purposes;

d. Whether South32 failed to pay the Hourly Employees overtime wages at the required premium rates—based on all remuneration—for all overtime hours worked;

e. Whether South32's decision not to pay the Hourly Employees overtime wages at the required rates—based on all remuneration—for all overtime hours worked was made in good faith; and

f. Whether South32's violations were willful.

85. South32's rounding policy and bonus pay scheme deprived Goodnough and the other Hourly Employees of the overtime wages at the required premium rate—based on all remuneration—for overtime hours worked.

86. There are many similarly situated Hourly Employees who have been denied overtime wages at the required rates—based on all remuneration—for all overtime hours worked, in violation of the FLSA, who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

87. The Hourly Employees are known to South32, are readily identifiable, and can be located through South32's business and personnel records.

**SOUTH32'S VIOLATIONS WERE WILLFUL**

88. South32 knew it employed the Hourly Employees.

89. South32 knew it was subject to the FLSA's overtime provisions.

90. South32 knew Goodnough and the other Hourly Employees were its non-exempt employees entitled to overtime wages.

91. South32 knew the FLSA required it to pay non-exempt employees, including Goodnough and the other Hourly Employees, overtime wages at rates not less than 1.5 times

their regular rates of pay—based on all remuneration—for all hours worked after 40 a workweek.

92. South32 knew Goodnough and each Hourly Employee worked more than 40 hours in at least one workweek during the last 3 years because South32 recorded their "on the clock" hours via its timekeeping system.

93. South32 knew it had a duty to ensure the Hourly Employees were not performing compensable work "off the clock" (without pay).

94. South32 controlled the Hourly Employees' work procedures.

95. South32 knew the Hourly Employees' mandatory "off the clock" work was a fundamental requirement of their jobs with South32.

South32 knew the Hourly Employees' mandatory "off the clock" work was an integral and indispensable requirement of their jobs with South32.

96. South32 knew it rounded the Hourly Employees' hours for its own primary benefit.

97. In other words, South32 knew the Hourly Employees performed compensable work "off the clock" and without compensation.

98. South32 knew it paid Goodnough and the other Hourly Employees non-discretionary production bonuses.

99. South32 knew these non-discretionary bonuses were not included in Goodnough's and the other Hourly Employees' regular rates of pay for overtime purposes.

100. And South32 knew the FLSA required it to pay Goodnough and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 a workweek.

101. South32 knew Goodnough and the other Hourly Employees regularly worked in excess of 40 hours a workweek.

102. Thus, South32 knew, should have known, or recklessly disregarded whether it failed to pay Goodnough and the other Hourly Employees at least 1.5 times their regular rates of pay—based on all remuneration—for all the hours they worked in excess of 40 a workweek.

103. South32's failure to pay Goodnough and the other Hourly Employees overtime at the required rate—based on all remuneration—for all overtime hours worked was neither reasonable, nor was this shared decision made in good faith.

104. South32 knowingly, willfully, and/or in reckless disregard of the FLSA carried out its unlawful bonus pay scheme and rounding policy that deprived Goodnough and the other Hourly Employees of overtime wages at the required rate of pay—based on all remuneration—for all hours worked after 40 a workweek.

## COUNT I

**FAILURE TO PAY WAGES UNDER THE FLSA**
**(FLSA COLLECTIVE)**

105. Goodnough brings his FLSA claim as a collective action on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

106. South32 violated, and is violating, the FLSA by employing non-exempt employees, such as Goodnough and the other FLSA Collective Members, in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages

at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for the hours they worked in excess of 40 a workweek.

107. South32's unlawful conduct harmed Goodnough and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

108. Accordingly, South32 owes Goodnough and the other FLSA Collective Members the difference between the wages actually paid and the wages, including overtime wages, actually earned.

109. Because South32 knew or showed reckless disregard for whether its bonus pay scheme and rounding policy violated the FLSA, South32 owes Goodnough and the other FLSA Collective Members these wages for at least the past (3) years.

110. South32 is also liable to Goodnough and the other FLSA Collective Members for an amount equal to all their unpaid overtime wages as liquidated damages.

111. Finally, Goodnough and the other FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II

### FAILURE TO PAY EARNED WAGES UNDER THE AWA
### (ARIZONA CLASS)

112. Goodnough brings his AWA claim on behalf of himself and the other Arizona Class Members pursuant to FED. R. CIV. P. 23.

113. The conduct alleged violates the AWA. A.R.S. §§ 23-350, *et seq.*

114. At all relevant times, South32 was Goodnough's and the other Arizona Class Members' "employer" within the meaning of the AWA. *See* A.R.S. § 23-350(3).

115. At all relevant times, South32 employed Goodnough and the other Arizona Class Members as its covered "employees" within the meaning of the AWA. *See* § 23-350(2).

116. Goodnough's and the other Arizona Class Members' outstanding earned overtime wages are "wages" within the meaning of the AWA. *See* § 23-350(7).

117. The AWA requires employers, like South32, to timely pay employees, including Goodnough and the other Arizona Class Members, "all wages due … up to that date" on their regular established paydays. A.R.S. § 23-351(C).

118. The AWA further requires employers, like South32, to timely pay employees, including Goodnough and the other Arizona Class Members, all earned overtime wages no later than sixteen days after the end of the most recent pay period. A.R.S. § 23-351(C)(3).

119. The AWA prohibits employers, like South32, from withholding or diverting any portion of an employee's earned wages. A.R.S. § 23-352.

120. The AWA further prohibits employers, like South32, from deducting payment from an employee's paycheck without the annual written or electronic permission of the employee. *See* A.R.S. § 23-361.02.

121. South32 violated, and is violating, the AWA by failing to timely pay, by willfully withholding earned overtime wages, and deducting payment from employee paychecks from Goodnough and the other Arizona Class Members. *See* A.R.S. §§ 23-351(C)(3); 23-352; 23-361.02.

122. South32's unlawful conduct harmed Goodnough and the other Arizona Class Members by depriving them of timely payment of the full overtime wages they are owed.

123. Accordingly, South32 owes Goodnough and the other Arizona Class Members the difference between the rate actually paid and the proper overtime rate, which to-date, remains outstanding.

124. South32 is liable to Goodnough and the other Arizona Class Members for treble damages. *See* A.R.S. § 23-355.

125. Finally, Goodnough and the other Arizona Class Members are entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action.

## JURY DEMAND

126. Goodnough demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Goodnough, individually and on behalf of the other Hourly Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

b. An Order appointing Goodnough and his counsel to represent the interests of the Arizona Class;

c. An Order finding South32 liable to Goodnough and the other Hourly Employees for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

d. An Order finding South32 liable to Goodnough and the Arizona Class Members for unpaid earned wages owed under the AWA, plus treble damages;

e. A Judgment against South32 awarding the Hourly Employees all their unpaid wages, including overtime wages, liquidated damages, treble damages, statutory damages, and any other penalties available under the FLSA and/or AWA;

f. An Order awarding attorneys' fees, costs, and expenses;

g. Pre- and post-judgment interest at the highest applicable rates; and

h. Such other and further relief as may be necessary and appropriate.

Dated: June 24, 2026

Respectfully submitted,

**RANDALL LAW PLLC**

By: */s/ Samuel R. Randall*
Samuel R. Randall (No. 024517)
4742 North 24th Street, Suite 300
Phoenix, Arizona 85016
602-328-0262 – Telephone
srandall@randallslaw.com

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
5847 San Felipe Street, Suite 2400
Houston, Texas 77057
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
5847 San Felipe Street, Suite 2400
Houston, Texas 77057
713-877-8788 – Telephone
rburch@brucknerburch.com

**Pro hac vice applications forthcoming*

**ATTORNEYS FOR GOODNOUGH & THE HOURLY EMPLOYEES**